**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

May 13, 2022

John G. Harris, Esquire
Berger Harris LLP
1105 N. Market Street, 11th Floor
Wilmington, DE  19801

Douglas D. Herrmann, Esquire
Emily L. Wheatley
Troutman Pepper Hamilton Sanders LLP
1313 N. Market Street, Suite 5100
Wilmington, DE  19899

> Re:  *SDF Funding LLC, et al. v. Stanley B. Fry, et al.*,
>       C.A. No. 2017-0732-KSJM

Dear Counsel:

This letter opinion grants Jared and Ryan Fry's motion to dismiss the Amended Complaint under Court of Chancery Rule 12(b)(2) for lack of personal jurisdiction. This decision adopts the factual background and defined terms set forth in my May 13, 2022 Memorandum Opinion.[1]

"When a defendant moves to dismiss a complaint pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the defendant."[2]  In ruling on a 12(b)(2) motion, this court may "consider the pleadings, affidavits, and any discovery of record."[3]  "If, as here, no evidentiary hearing

---

[1] C.A. No. 2017-0732-KSJM, Docket ("Dkt.") 187.

[2] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007) (citing *Werner v. Mill Tech. Mgmt., L.P.*, 831 A.2d 318 (Del. Ch. 2003)).

[3] *Id.* (citing *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *3 (Del. Ch. Mar. 31, 2003)).

has been held, plaintiffs need only make a *prima facie* showing of personal jurisdiction and 'the record is construed in the light most favorable to the plaintiff.'"[4]

Delaware courts resolve questions of personal jurisdiction using a two-step analysis, first determining "that service of process is authorized by statute,"[5] and second determining that the defendant had certain minimum contacts with Delaware such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice."[6]

To establish personal jurisdiction, Plaintiffs rely on Sections 3104(c)(1) and 3104(c)(3) of Delaware's Long-Arm Statute and the conspiracy theory of jurisdiction.[7]

---

[4] *Id.* (first citing *Benerofe v. Cha*, 1996 WL 535405, at *3 (Del. Ch. Sept. 12, 1996), and then quoting *Cornerstone*, 2003 WL 1787959, at *3).

[5] *Id.*

[6] *Matthew v. Fläkt Woods Gp. SA*, 56 A.3d 1023, 1027 (Del. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)).

[7] As to Ryan, Plaintiffs also argues that general jurisdiction is appropriate under 10 *Del. C.* § 3104(c)(4) because he formed at least nine entities under Delaware law. This court is reticent to find that the formation of Delaware entities amounts to the sort of persistent course of conduct necessary to satisfy the constitutional standard for subjecting a non-resident to the court's general jurisdiction. *See Red Sail Easter Ltd. P'rs L.P. v. Radio City Music Hall Prods. Inc.*, 1991 WL 129174, at *3 (Del. Ch. July 10, 1991) (finding that the incorporation of a Delaware entity and its subsidiaries was insufficient to establish general personal jurisdiction under Section 3104(c)(4)). *LaNuova D&B, S.p.A. v. Bowe Co., Inc.*, 513 A.2d 764 (Del. 1986), on which Plaintiffs rely, is readily distinguishable. There, the court found an Italian manufacturer of roofing material's course of conduct sufficient to give rise to jurisdiction under Section 3104(c)(4) where the manufacturer engaged in a competitive warranty program throughout the eastern United States. *Id.* at 767. Plaintiffs also cite to *Saltz v. Brantley Mgmt. Co.*, 2011 WL 2535802 (Del. Super. May 31, 2011), *aff'd on other grounds*, 36 A.3d 348 (Del. 2012) (TABLE), where the Delaware Superior Court deemed a non-resident defendant a "serial incorporator" subject to general personal jurisdiction. Candidly, I question the logic of this aspect *Saltz*, which was affirmed on

There is significant analytical overlap in these theories. At base, all are "single act" theories of jurisdiction and thus require a forum-related act or omission.[8] Because Plaintiffs have not adequately alleged a forum-related act or omission, each of the theories fail.

As forum-related acts, Plaintiffs first argue that Retro and Optical were formed under Delaware law by a member of the alleged conspiracy for the purpose of usurping Flashpoint corporate opportunities. It is true, as Plaintiffs observe, that "[f]orming a Delaware entity for the purpose of engaging in a [challenged] transaction constitutes the 'transaction of business' within the State of Delaware sufficient to confer specific personal jurisdiction over the party forming the entity under Section 3104(c)(1)."[9]

---

other grounds. In any event, the course of conduct giving rise to personal jurisdiction was more pervasive than that present here. *Compare* Ryan's alleged involvement in a conspiracy that caused the formation of entities, *with id.* at *1, *4 (finding conduct sufficient to give rise to general personal jurisdiction where the non-resident had incorporated 22 Delaware entities over many decades and served on the board of two of the entities that managed a series of private equity investment funds).

[8] *See* 10 *Del. C.* § 3104(c)(1) (providing that a court may exercise personal jurisdiction over any non-resident who "*[t]ransacts any business or performs any character of work or service* in the State" (emphasis added)); 10 *Del. C.* § 3104(c)(3) (providing that a court may exercise personal jurisdiction over any non-resident who "[c]auses tortious injury in the State *by an act or omission* in this State" (emphasis added)); *see also Virtus Cap. L.P. v. Eastman Chem. Co.*, 2015 WL 580553, at *12 (Del. Ch. Feb. 11, 2015) (describing analytical overlap between the first three elements of the test for conspiracy theory of personal jurisdiction and the Long-Arm Statute).

[9] *In re Mobilactive Media, LLC*, 2013 WL 297950, at *28 (Del. Ch. Jan. 25, 2013) (internal quotation marks omitted).

To support the exercise of specific personal jurisdiction, however, the Delaware entity must have been formed *for the purpose* of engaging in the challenged transaction.[10] The mere fact that a fiduciary caused (or was part of a conspiracy to cause) a related entity to usurp a corporate opportunity, standing alone, does not require a finding that the usurping entity was formed for that purpose. In this case, Plaintiffs do not allege facts from which it can be reasonably inferred that Retro or Optical were formed for the requisite illicit purpose.[11]

Plaintiffs next argue that Jared and Ryan are subject to personal jurisdiction under Section 3104(c)(3), which permits the exercise of jurisdiction where a nonresident causes "[c]auses tortious injury in the State by an act or omission in this State."[12] Plaintiffs contend that Jared and Ryan's exercise of the disputed stock options caused injury to a Delaware corporation, and the situs of that injury is Delaware. Assuming (solely for the sake of

---

[10] *See Conn. Gen. Life Ins. Co. v. Pinkas*, 2011 WL 5222796, at *2 (Del. Ch. Oct. 28, 2011) (observing, in the context of Section 3104(c)(1), that "merely participating in the formation of a Delaware entity, without more, does not create a basis for jurisdiction in Delaware" (citations omitted)).

[11] The Amended Complaint asserts that these entities were formed "for the express purpose of usurping a corporate opportunity," but that allegation is wholly conclusory and directly contrary to declarations of record. *See* Dkt. 91, Jared Fry Aff. ¶¶ 9, 10–11; Dkt. 91, Ryan Fry Aff. ¶¶ 8, 17–18. The court thus need not accept the statement as true for the purpose of this motion. *See Altabef v. Neugarten*, 2021 WL 5919459, at *3 (Del. Ch. Dec. 15, 2021) (holding that "[w]hen a defendant moves to dismiss under Rule 12(b)(2), the plaintiffs have the burden to show a prima facie case of personal jurisdiction over a nonresident defendant by demonstrating 'specific facts,' and not 'rely[ing] on mere conclusory assertions'" (citations omitted)).

[12] 10 *Del. C.* § 3104(c)(3).

argument) that Plaintiffs are correct as to this premise, Plaintiffs still fail to identify an "act or omission" in the State as required by Section 3104(c)(3).[13] Plaintiffs effectively read the "act or omission" requirement out of Section 3104(c)(3). Without the requirement that the tortious injury be caused by an act or omission in Delaware, Section 3104(c)(3) would arguably permit the exercise of jurisdiction whenever a nonresident causes economic harm to a Delaware corporation. Such an interpretation sweeps too broadly and is contrary to Delaware law.[14]

The three cases cited by Plaintiffs do not support their interpretation of Section 3104(c)(3). The first two cases cited by Plaintiffs, *Chandler v. Ciccoricco*[15] and *Sample v. Morgan*,[16] are better interpreted as Section 3104(c)(1) cases because both centered on transactions that occurred within Delaware. The last case, *Pfeiffer v. Leedle*, did not address personal jurisdiction at all.[17]

---

[13] *Ramada Inns, Inc. v. Drinkhall*, 1984 WL 247023, at *2 (Del. Super. May 17, 1984) (holding that Section 3104(c)(3) "requires both a tortious act within the State and an act or omission within the State").

[14] *See Aeroglobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 2003 WL 77007, at *5 (Del. Super. Jan. 6, 2003) (interpreting Section 3104(c)(3) where "all we are left with is that there was a conspiracy, parts of which took place in Delaware, and that the Individual Defendants were a part of the conspiracy," and concluding that "there is nothing which suggests that the Delaware General Assembly intended that jurisdiction over a nonresident individual be exercised in such an expansive and seemingly tenuous manner, at least in this case").

[15] 2003 WL 21040185 (Del. Ch. May 5, 2003).

[16] 935 A.2d 1046 (Del. Ch. 2007).

[17] 2013 WL 5988416 (Del. Ch. Nov. 8, 2013).

In *Chandler*, the plaintiff challenged the issuance of preferred stock that converted to common stock on a one-to-ten basis. To complete the preferred stock issuance, the defendants were required to file a Certificate of Designation of Rights and Preference with the Secretary of State. The court held that the Secretary of State filing satisfied Section 3104(c)(1), not Section 3104(c)(3).[18]

In *Sample*, the plaintiff challenged the issuance of 200,000 shares, representing 31.7% of the company's voting power, to the company's officers and managers under an equity incentive plan.[19] With the challenged share issuance, the defendants filed a Certificate of Amendment with the Secretary of State lowering the par value of the company's stock from $1.00 to $0.001 and the cost of acquiring the 200,000 shares from $200,000 to $200. The court held that the Secretary of State filing satisfied Section 3104(c)(1).[20]

Plaintiffs also cite to *Pfeiffer*, where the court concluded that the company's president breached his fiduciary duty by receiving 449,436 stock options in one year and 285,000 stock options the next year, in violation of a stock option plan that limited

---

[18] 2003 WL 21040185, at *11.

[19] 935 A.2d at 1049.

[20] *Id.* at 1057. Plaintiffs cite to dicta in *Sample* that suggests that personal jurisdiction was also appropriate in that case under Section 3104(c)(3). Specifically, Plaintiffs rely on the following quote: "[w]hen a Delaware corporation is financially injured by faithless conduct of its directors, the corporation is injured in its legal home, this State, for purposes of § 3104(c)(3)." *Id.* For the reasons explained above the line, however, one should be skeptical of reading *Sample* beyond its facts to hold that *any* financial injury to a Delaware corporation satisfies Section 3104(c)(3).

participants to receiving no more than 150,000 stock options annually.[21] But *Pfeiffer* did not involve a challenge to personal jurisdiction, presumably because the nonresident was an officer of the corporation who had impliedly consented to jurisdiction under 10 *Del. C.* § 3114(b). Here, Jared and Ryan are neither directors nor officers of Flashpoint.[22]

For these reasons, the claims against Jared and Ryan are dismissed, albeit without prejudice. Because the Memorandum Opinion denied the other Defendants' motions to dismiss, this action will proceed to discovery. It is possible that discovery could reveal forum-related acts that support the exercise of personal jurisdiction over Jared and Ryan. If so, then Plaintiffs may move to supplement the Amended Complaint to reassert claims against Jared and Ryan, who may then renew their motions to dismiss if appropriate.[23]

---

[21] 2013 WL 5988416, at *2, *10.

[22] Plaintiffs also seem to argue that Jared and Ryan's status as key managerial employees renders them fiduciaries subject to jurisdiction under Section 3104(c)(3) whenever they harm Flashpoint. In essence, Plaintiffs' position requires an assumption that any breach of fiduciary duty that results in harm to a Delaware corporation is sufficient to create jurisdiction over a nonresident under Section 3104(c)(3). Such an interpretation would render Section 3114 superfluous, of course. Aside from the dicta in *Sample*, *supra* note 20, Plaintiffs cite no support for this expansive interpretation of the Long-Arm Statute. This decision declines to adopt Plaintiffs' interpretation.

[23] *See Hospitalists of Del., LLC v. Lutz*, 2012 WL 3679219, at *11 (Del. Ch. Aug. 28, 2012) (noting "that Rule 15(aaa) does not preclude the filing of an amended pleading when a party is dismissed for lack of personal jurisdiction, only when dismissal is under Rules 12(b)(6) or 23.1. Hence, if during discovery Plaintiffs uncover additional information to support the exercise of personal jurisdiction over [defendants], they may move for leave to amend the Complaint under Rule 15(a)").

Having concluded that this court lacks personal jurisdiction, this decision need not reach Jared and Ryan's arguments under Court of Chancery Rule 12(b)(6).

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Chancellor

cc:    All counsel of record (by *File & ServeXpress*)